UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TARRELL RISTER,                          :
                                         :
          Plaintiff                      : No. 4:CV-10-1574
                                         :
     vs.                                 : (Complaint Filed 07/29/10)
                                         :
                                         : (Judge Muir)
MARIOSA LAMAS, et al.,                   :
                                         :
          Defendants                     :

### MEMORANDUM AND ORDER #5 of

June 21, 2011

## Background

Plaintiff, an inmate confined in the Rockview State Correctional Institution ("SCI-Rockview"), Bellefonte, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. Moving defendants are the following SCI-Rockview employees: Superintendent Lamas; Corrections Superintendent Assistant Rackovan; Unit Manager Granlund; Deputy Thompson; Sergeant Best; Lieutenant Nixon; and Correctional Officers ("CO") Angelo, Craig, Detwiler, Heredia, Tischler and Watson. Presently before the Court is defendants' motion to dismiss the plaintiff's complaint. (Doc. 22). The parties have fully briefed the issues and the motion is now ripe for disposition.

For the reasons that follow, defendants' motion to dismiss will be granted, in part, and denied, in part.

## I.  **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

2

unlawfully." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Id</u>., 127 S.Ct. at 1965 (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." <u>Capogrosso v. The Supreme Court of New Jersey</u>, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." <u>Fowler</u>, <u>supra</u>, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. <u>Id</u>. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " <u>Id</u>. at 211 (quoted case omitted).

## II. <u>Allegations in Complaint</u>

The plaintiff's complaint, which is one continual narrative, states the following:

On May 19, 2010, at approximately 7:00 - 8:00 pm,

3

during RHU general cell search and strip search, C.O. Taylor yells after [plaintiff] was clear of [his] strip search "Rister has a razor in is hand!", which Sgt. Best yells "throw his ass down" which [plaintiff] was thrown down on [his] face which have slap the unsanitary floor first in front of [his] cell B-24 camera view, which left abrasions on [his] right side of [his] face and swelling (sic) forehead on [his] left side after C.O. Taylor and Sgt. Best squash[ed] [his] head down on the unsanitary floor, which C.O. Taylor states "your not so big and bad now are you, nigga (sic)", while C.O. Detwiler and C.O. Watson were squashing [his] legs that left deeply abrasions on [his] right knee from the unsanitary floor, after minutes past of being restraint without [plaintiff] fighting back at all, the guards then force pulled [plaintiff] behind [his] back and forc[ed] [him] in [his] cell and began forcing [his] arms through the small pot slot as the door pot slot and handcuffs deeply cutted (sic) abrasions on both of [his] arms, wrists and hands while John Doe force the handcuffs off [his] writs. [Plaintiff] could not see who was the C.O. because the guards had [his] arms forced all the way through the small door pot slot which it feeled (sic) like [his] arms [were] coming off [his] upper body, the above guards used excessive force against [him] that was not in good faith, which is a violation of [his] Eighth Amendment prohibition of "Cruel and Unusual Punishment" which [he is] protected under the Constitutional Rights.

(Doc. 1, complaint at 2).

On July 29, 2010, plaintiff filed the instant action seeking compensatory and punitive damages, as well as a transfer, for defendants' use of excessive force, retaliation and "conspiracy to do nothing to stop the wrong." Id.

4

Specifically, plaintiff's claim for relief states the following:

> The above guards used excessive force against me that was not in good faith, which is in violation of my Eighth Amendment prohibition of Cruel and Unusual Punishment, which I am protected under the Constitutional rights and L.T. Nixon, C.O. Tischler, C.O. Craig, C.O. Angelo, C.O. Heredia and C.O. Thompson are in "Conspiracy" do(sic) to just standing there and done (sic) nothing to try to stop the wrong, and Facility Manager Lamas and Deputy Thompson retaliated against me for my excessive force complaint that's filed with OPR and for Misconduct No. B205393 and B205394, Inmate Parker JA 3190 told security the truth that I did not stab him and this is nothing but retaliation, personal torture and kidnapping and this is why I am placed on Administrative Custody and can't call my family and can't have my personal property, which is nothing but retaliation and cruel and unusual punishment, that's why I have not been transferred nor released to population or given my personal property and the right to call my loved ones and Grievance Coordinator Rackovan is in "Conspiracy" for rejection of grievances but still given them file numbers, and Unit Manager Granlund is in "Conspiracy" for not responding to my grievance of C.O. Taylor harassing me, I have been seen my medical and pictures have been taken of my injuries, I pray that my complaint is granted.

<u>Id</u>.

Defendants move to dismiss the plaintiff's complaint on the basis that plaintiff failed to exhaust his administrative remedies, prior to filing the instant action in federal court. (Doc. 24, brief in support of defendants' motion to dismiss).

5

### III.     <u>Discussion</u>

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a),[1] prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials, including the use of excessive force, until the inmate has exhausted available state remedies.   42 U.S.C. § 1997e(a) (2003).    A prisoner must exhaust administrative remedies or risk procedural default. <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir.2004). The PLRA requires "proper exhaustion," meaning that the prisoner must complete the available administrative review process in accordance with the applicable procedural rules, including deadlines. <u>Woodford v. Ngo</u>, 548 U.S. 81, 90-91(2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...."); <u>see also</u> <u>Wright v. State Corr. Inst. at Greene</u>, No. CIV.A.06-865, 2009 WL 2581665, at *2 (W.D.Pa. Aug.20, 2009). If

─────────────────

1. This section states as follows:
    No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C.A. § 1997e(a).

6

a prisoner does not exhaust available administrative remedies,
his claims should be dismissed. Booth v. Churner, 532 U.S. 731,
740-41,(2001) (affirming the holding of the Third Circuit which
upheld the district court's decision to dismiss Plaintiff's
complaint without prejudice for failure to exhaust
administrative remedies).

Because an inmate's failure to exhaust under the PLRA is
an affirmative defense, it must be pled and proven by
defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir.2002).
Consequently, a prisoner does not have to allege in his
complaint that he has exhausted administrative remedies. Id.
When raised as an affirmative defense, however, exhaustion of
all administrative remedies is mandatory. Spruill, 372 F.3d at
227. Thus, it is irrelevant whether the inmate believes that
such administrative remedies would be effective or whether the
available administrative processes can grant the desired
remedy. Booth, 532 U.S. at 740-41. The exhaustion requirement
applies to grievance procedures "regardless of the relief
offered by the administrative procedures." Id. at 741; Nyhuis
v. Reno, 204 F.3d 65, 76 (3d Cir.2000). In other words, there
is no futility exception to the PLRA's exhaustion requirement.

7

Nyhuis, 204 F.3d at 71. Thus, the exhaustion requirement is not waived even in cases where the relief sought in the federal action cannot be provided by the administrative process in the prison. Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth, 532 U.S. at 741.

Nonetheless, "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77-78 (3d Cir.2000). The Third Circuit has repeatedly noted that administrative remedies are not readily available, as required by § 1997e, where prison officials mislead or otherwise preclude an inmate from exhausting prison grievances. In such cases, the exhaustion requirement is excused.[2] See, e.g., Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir.2003) (holding that district court incorrectly dismissed claim because it did not consider prisoner's allegations that he had been denied grievance forms by prison officials); Brown v. Croak, 312 F.3d 109, 112 (3d Cir.2002) (finding that prisoner's claim that he was misled by prison officials precluded

---

2. Notably, "[t]he availability of administrative remedies to a prisoner is a question of law." Brown, 312 F.3d at 111.

dismissal based on exhaustion requirement); <u>Camp v. Brennan</u>, 219 F.3d 279, 281 (3d Cir.2000) (noting that prisoner who was misled by prison officials regarding grievance procedure faced a Catch-22 situation which could preclude finding of non-exhaustion); <u>see also</u> <u>Oliver v. Moore</u>, No. CIV.A.04-1540, 2005 WL 1988996, at *3-4 (3d Cir. Aug. 18, 2005) (holding that while administrative remedy may be deemed unavailable where prison officials prevented pursuit of prison grievance process, where no evidence of such interference is found, exhaustion is not excused).

Several other circuits have faced the precise question at issue in this case and expressly held that the exhaustion requirement is satisfied where prison officials fail to timely respond or to respond at all to an inmate's written grievance. In such cases, the grievance procedure is deemed "unavailable" and the exhaustion requirement is excused. <u>See</u>, <u>e.g.</u>, <u>Boyd v. Corr. Corp. of Am.</u>, 380 F.3d 989, 996-97 (6th Cir.2004) (declining to dismiss complaint for failure to exhaust where plaintiff alleged that he did not receive a response to his grievance); <u>Ziemba v. Wezner</u>, 366 F.3d 161, 163 (2d Cir.2004) (concluding that the affirmative defense of exhaustion is

9

subject to estoppel if prison officials preclude the inmate from exhausting administrative remedies); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable ...."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir.2002) ( "We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." (internal quotation marks omitted)); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir.2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); see also Gellock v. Prison Health Servs., Inc., No. CIV.A.07-8, 2009 WL 2038235, at *7 (W.D.Pa. Jul. 8, 2009) (finding that where plaintiff claimed that he never received responses regarding his grievances, where he submitted copies of request slips sent to the grievance coordinator stating that he had not received responses, and where the record was otherwise devoid of any evidence that

responses were ever provided by the prison, the court found that the administrative remedies were rendered unavailable and the grievances must be deemed exhausted).

The question now pending before the Court is whether plaintiff has exhausted his claims through the requisite administrative process and, if not, whether the prison's responsive actions rendered the administrative process unavailable.

**A.   Excessive Force and Conspiracy Claim**

The defendants argue that Rister failed to exhaust his administrative remedies because he filed the instant action prior to the completion of the investigation into plaintiff's Grievance No. 319257, concerning the excessive use of force by defendants Taylor, Best, Watson and Detwiler, and the conspiracy of defendants Nixon, Tischler, Craig, Angelo, Heredia and Thompson for witnessing this restraint without intervening. (Doc. 24, brief in support of complaint). In support of this contention, defendants submit a copy of Grievance No. 319257, which was filed on May 20, 2010, (doc. 24-3, Ex. B, Official Inmate Grievance), as well as Grievance Officer Rackovan's response, dated June 8, 2010, which states

11

the following:

> The investigation of your grievance is continuing.
> Due to the need for additional information, I cannot
> provide a response within the original time frame.
> DC-ADM 804 provides for an extension in situations
> such as this.   I will provide a response upon
> completion of the investigation.   Your patience is
> appreciated.

(Doc. 24-3, Ex. B, Official Inmate Grievance).

On June 22, 2010, another response was issued which stated

the following:

> As this is a grievance alleging excessive force, your
> claims are being investigated by the Security Office
> in accordance with DC-ADM 001.   The results of the
> Security Office investigation will be sent to the
> D.O.C. Office of Professional Responsibility (OPR) for
> their review.   OPR will then forward a response to
> you.

Id.

On June 24, 2010, the OPR responded to an inquiry by the

plaintiff, with the following:

> The Office of Professional Responsibility recently
> reviewed your correspondence on June 4, 2010.
>
> Please be advised that your allegations are currently
> being investigated.  The investigation is not complete
> at this time.  Once completed, you will be notified in
> writing of the findings by the security office at the
> State Correctional Institution Rockview.
>
> Your correspondence will be forwarded to
> Superintendent Lamas for her review.

Id.  Thus, defendants conclude that plaintiff failed to wait for the completion of the investigation and instead filed the instant action on July 29, 2010, without first exhausting his administrative remedies with respect to Grievance No. 319257.

> Pursuant to the Inmate Grievance Policy, DC-ADM 804:
>
> The Grievance Officer shall provide a written response to the inmate within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System. The Facility Manager/designee may authorize an extension of up to 10 additional working days if the investigation of the grievance is ongoing. If an extension is necessary, the inmate shall be advised in writing using the Extension Form (Attachment 1-E).

See Pa. Dept. of Corr. Policies; http://www.portal.state.pa.us.

Plaintiff argues that defendants failed to comply with DC-ADM 804, in that there last communication to plaintiff concerning an extension of time was on June 24, 2010, and at that time defendants were well beyond the 10 additional working days provided for by DC-AMD 804, and failed to provide plaintiff with any further notification of extensions.

Prior to filing his complaint on July 29, 2010, plaintiff twice wrote to Superintendent Lamas inquiring as to the status of Grievance No. 319257. (See Doc. 26, Ex. A, Inmate's Request to Staff Member dated July 7, 2010 and July 15, 2010).  Both

Inmate's Requests went unanswered.  <u>Id</u>.  Moreover, plaintiff submits two additional informal requests to staff member, dated September 18, 2010 and September 24, 2010, inquiring as to the outcome of the investigation into Grievance No. 319257.  (<u>See</u> Doc. 26, Ex. A, Inmate's Request to Staff Member dated September 18, 2010 and September 24, 2010).  Plaintiff's September 24, 2010, inquiry was responded to with the following: By means of this response I am informing the CSA of your concerns.  <u>Id</u>.  Thus, as of September 24, 2010, some four months after the filing of Grievance No. 319257, there was still no notice to plaintiff that the investigation was completed.

As is apparent from the parties' submissions, plaintiff was told to wait for the termination of the investigation. However, as plaintiff's exhibits demonstrate, defendants never informed plaintiff that the investigation was completed.  As such, the Court finds that the formal grievance proceeding required by DC-ADM 804 was never "available" to plaintiff within the meaning of 42 U.S.C. § 1997e. <u>Camp v. Brennan</u>, <u>supra</u>.  <u>Cf</u>. <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir.2001) (holding that "a remedy that prison officials prevent a

14

prisoner from 'utilizing' is not an 'available' remedy under §
1997e").  Consequently, defendants have not met their burden of
proving the affirmative defense of failure to exhaust remedies
and their motion to dismiss plaintiff's Eighth Amendment and
Conspiracy claim will be denied.

     **B.**   **<u>Harassment Claim</u>**

On June 11, 2010, plaintiff filed Grievance No. 322455,
claiming that C.O. Taylor is harassing him by saying "sexual
things" to him and calling him "a snitch and bitch" and making
comments about his food.  (Doc. 24-3, Ex. D, Official Inmate
Grievance No. 322455).

On July 3, 2010, plaintiff addressed an Inmate's Request
to Staff Member to defendant Granlund, asking why he had not
received a response to his June 11, 2010 grievance.  (Doc. 26,
Ex. C, Inmate's Request to Staff Member).

On July 4, 2010, after not receiving any response,
plaintiff filed an appeal of Grievance No. 32245 to
Superintendent Lamas.  (Doc. 26, Ex. C, Official Inmate
Grievance Appeal).

On July 14, 2010, plaintiff submitted an Inmate's Request
to Staff member to Superintendent Lamas, inquiring as to why he

had not received a response to his July 4, 2010 appeal. (Doc. 26, Ex. C, Inmate's Request to Staff Member).

On July 16, 2010, plaintiff filed a final appeal to Chief Hearing Examiner Varner, appealing Grievance No. 322455 and the lack of response thereto. (Doc. 26, Ex. C., Official Inmate Grievance Appeal).

Although defendant, Corrections Superintendent Assistant Jeffery Rackovan states in his declaration that plaintiff's Grievance No. 322455 was denied and deemed frivolous on August 3, 2010, (see Doc. 24-5, Ex. H, Declaration of Jeffery Rackovan, Corrections Superintendent Assistant at ¶ 7), the exhibit submitted in support of this contention fails to contain a date or signature of the reviewing official. (See Doc. 24-3, Ex. D, Official Inmate Grievance Initial Review Response). Thus, plaintiff challenges the validity of this document, stating that Grievance Officer Granlund "tried to cover up an Initial Review Response to Grievance No. 322455 by submitting a false Initial Review Response that defendant didn't even stamp date, nor sign the initial review response, which shows defendants never responded to plaintiff's grievance." (Doc. 26, brief in opposition).

16

While the Court recognizes that a material issue of fact has been created surrounding the question of whether defendants properly and timely responded to plaintiff's Grievance No. 322455, resolution of such claim is unnecessary, as it is well settled that plaintiff's underlying claim of verbal harassment, although deplorable, does not, standing alone, violate the Eighth Amendment. See Robinson v. Taylor, 204 Fed. Appx. 155, 156 (3d Cir.2006); McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001);, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.'"). See also Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir.1997), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir.2008) ("As for being subjected to abusive language directed at [one's] religious and ethnic background, verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (internal quotation marks omitted).

17

Indeed, allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner. <u>See</u> <u>Jean-Laurent v. Wilkerson</u>, 438 F.Supp.2d 318, 324-25 (S.D.N.Y.2006) (pretrial detainee's claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); <u>Ramirez v. Holmes</u>, 921 F.Supp. 204, 210 (S.D.N.Y.1996) (threats and verbal harassment without physical injury or damage not cognizable in claim filed by sentenced inmate under § 1983). <u>See also</u> <u>Price v. Lighthart</u>, 2010 WL 1741385 (W.D.Mich. Apr. 28, 2010); <u>Glenn v. Hayman</u>, 2007 WL 894213, *10 (D.N.J. Mar. 21, 2007); <u>Stepney v. Gilliard</u>, 2005 WL 3338370 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone ... no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting <u>Aziz Zarif Shabazz v. Pico</u>, 994 F.Supp. 460,

474 (S.D.N.Y.1998), and citing Collins v. Graham, 377 F.Supp.2d 241, 244 (D.Me.2005)). See also Moore v. Morris, 116 Fed. Appx. 203, 205 (10th Cir.2004) (mere verbal harassment does not give rise to a constitutional violation, even if it is inexcusable and offensive, it does not establish liability under section 1983), cert. denied, 544 U.S. 925 (2005); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 187–89 (D.N.J.1993)); Abuhouran v. Acker, 2005 WL 1532496 (E.D. Pa. June 29, 2005) ("It is well established ... that ... verbal harassment, ... standing alone, do[es] not state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir.1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.1999); Maclean v. Secor, 876 F.Supp. 695, 698 (E.D.Pa.1995)). See also Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987) (holding that verbal harassment and abuse are not recoverable under § 1983); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987) (holding that racially derogatory remarks, although "unprofessional and inexcusable," are not "a deprivation of liberty within the meaning of the due process

clause").

Here, plaintiff does not allege an accompanying violation that might allow the verbal harassment to state a separate claim in violation of his constitutional rights. Furthermore, at most, plaintiff alleges that he was offended by the discriminatory remarks. Indeed, the general allegations of "injury" in the complaint are nothing more than the mere recitation of a legal conclusion without factual allegations sufficient at this time to support a claim that the defendants were verbally harassing plaintiff as a form of punishment, as generally asserted. Consequently, because the alleged verbal harassment of plaintiff was not accompanied by any injurious actions—or physical actions of any kind—by the defendants, plaintiff fails to state a cognizable § 1983 claim for a violation of his Eighth Amendment right to be free from cruel or unusual punishment. Thus, this claim will be dismissed.

## C.   **Administrative Custody**

Defendants argue that plaintiff has failed to exhaust his administrative remedies with respect to his challenge to his placement in Administrative Custody. (Doc. (Doc. 24, brief in opposition at 7).  In support of this proposition, defendants

submit a copy of plaintiff's August 22, 2010 Grievance No. 332053, challenging his placement in Administrative Custody, (see doc. 24-4, Official Inmate Grievance) and returned unprocessed on August 24, 2010 because grievances related to an inmate's placement in administrative custody are handled pursuant to the Administrative Custody Procedure, and not the Inmate Grievance Procedure. (See Doc. 24-4, Grievance Rejection Form). Thus, defendants conclude that plaintiff has failed to exhaust his administrative remedies because he not only failed to follow the proper channels in addressing a challenge to Administrative Custody, but failed to file and exhaust his grievance prior to filing his July 29, 2010 action in federal court.

In opposition to defendants' argument, plaintiff submits a copy of his Notice of Appeal of the Program Review Committee's decision to continue plaintiff on Administrative Custody, dated July 9, 2010 and received by SCI-Rockview on July 12, 2010. (Doc. 26, Ex. B, Notice of Appeal).

On July 21, 2010, Superintendent Lamas denied plaintiff's appeal, stating the following:

You were placed in A.C. under DC-ADM 802, Section

V1.A.1C. in that you are considered a danger to yourself or others. Reports from the Security Office and PRC indicate your placement in General Population would potentially result in problems between you and other inmates.

Your placement in A.C. pending the Security Office and PRC determine the best course of action for your housing, is sustained.

Your appeal is denied.

(Doc. 26, Ex. B, July 21, 2010 Memorandum).

On July 26, 2010, plaintiff filed a final appeal of Superintendent Lamas' denial. (Doc. 26, Ex. B, Final Notice of Appeal). Three days later, plaintiff filed the instant action. Thus, it is apparent from plaintiff's own submissions that he did, in fact attempt to follow the appropriate channels in challenging his placement in administrative custody. However, it is also readily apparent that he failed to exhaust his administrative remedies prior to filing his federal civil rights action.

The Third Circuit has held that prisoner-plaintiffs may not file a federal civil rights action before exhausting their administrative remedies. Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir.2000). And more specifically, the PLRA rule requiring exhaustion would be circumvented by allowing prisoners to file

22

a federal claim while simultaneously continuing through the administrative grievance process. <u>Nyhuis</u>, 204 F.3d 65, 67 n. 12 (3d Cir.2000) (finding that the PLRA requires that "inmates first test and exhaust the administrative [grievance] process, and then, if dissatisfied, take the time necessary to file a timely federal action."); <u>see</u> <u>also</u> <u>Ahmed v. Dragovich</u>, 297 F.3d 201 (3d Cir.2002). Accordingly, pursuant to the Prison Litigation Reform Act, and the rule articulated by the Third Circuit in <u>Nyhuis</u>,[3] plaintiff's challenge to his placement in Administrative Custody must be dismissed without prejudice for his failure to properly exhaust his administrative remedies before filing a federal civil rights action.

**D.   Remaining Claims**

Plaintiff's remaining claims are that defendants Thompson and Lamas retaliated against him by placing him in Administrative Custody and revoking his privileges, that defendant Rackovan conspired against him by rejecting

---

3. "[W]e are not prepared to read the amended language in § 1997e(a) as meaning anything other than what it says–i.e., that no action shall be brought in federal court until such administrative remedies as are available have been exhausted." <u>Nyhuis</u>, 204 F.3d at 78.

plaintiff's grievances, and that defendant Granlund conspired against him by not responding to plaintiff's grievances. (See Doc. 1, complaint at 2).

Defendants contend that there are no grievances of record pertaining to these claims. (See Doc. 24-5, Ex. H, Declaration of Jeffrey Rackovan, Corrections Superintendent Assistant at ¶ 12). Plaintiff does not refute this contention. (See Doc. 26, brief in opposition). As such, these claims remain unexhausted and will be dismissed. An appropriate Order accompanies this Memorandum Opinion.


Dated: June 21, 2011          s/Malcolm Muir
                              MUIR
                              United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TARRELL RISTER,                   :
                                  :
        Plaintiff                 : No. 4:CV-10-1574
                                  :
    vs.                           : (Complaint Filed 07/29/10)
                                  :
                                  : (Judge Muir)
MARIOSA LAMAS, et al.,            :
                                  :
        Defendants                :

## ORDER

June 21, 2011

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1.   Defendants' motion to dismiss (Doc. 22), plaintiff's claims of excessive use of force by defendants Taylor, Best, Watson and Detwiler, and the conspiracy of defendants Nixon, Tischler, Craig, Angelo, Heredia and Thompson for witnessing this restraint without intervening, is **DENIED.** These are the only claims that will proceed.

2.   Defendants' motion to dismiss plaintiff's remaining claims (Doc. 22) is **GRANTED.**

3.   Plaintiff's motions for clarification (Docs. 31, 42, 45, and 56) and motion to schedule oral hearing (Doc. 46) are **DISMISSED** as moot.

s/Malcolm Muir
MUIR
United States District Judge