UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| TARRELL RISTER, | : | |
| Plaintiff | : | No. 4:10-cv-1574 |
| | : | |
| v. | : | (Judge Nealon) |
| | : | |
| MARIOSA LAMAS, et al., | : | |
| Defendants | : | |

FILED SCRANTON
MAR 0 1 2013
PER _____
DEPUTY CLERK

## MEMORANDUM

On July 29, 2010, Plaintiff, Tarrell Rister, an inmate formerly confined in the Rockview State Correctional Institution ("SCI-Rockview"), Bellefonte, Pennsylvania[1], filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff alleges that Defendants, employees at SCI-Rockview, used excessive force against him, or witnessed the use of force without intervening, in violation of his Eighth Amendment rights. (Id.). Presently before the Court is Defendants' motion for summary judgment. (Doc. 123). For the reasons set forth below, the motion will be deemed unopposed and granted.

## Background

The complaint alleges that on May 19, 2010, during a general cell search and strip search, Defendant Taylor yelled that Plaintiff had a razor in his hand, at which time Defendant Best yelled "throw his ass down." (Doc. 1). Plaintiff claims that he was thrown face-down on the floor causing abrasions and swelling to his face. (Id.). Defendants Detwiler[2] and Watson then allegedly squashed Plaintiff's legs in the floor resulting in deep abrasions to his knee. (Id.). Plaintiff alleges that he did not fight back. (Id.). After several minutes, Defendants allegedly

---

1. Plaintiff is currently housed at the Camp Hill State Correctional Institution in Pennsylvania.

2. Incorrectly spelled "Detwiller" on the docket.

pulled Plaintiff into his cell and forced his arms through the small slot on the door. (Id.). The complaint alleges that Plaintiff's handcuffs cut into both arms, wrists, and hands, leaving deep abrasions. (Id.). Plaintiff alleges that his arms were pulled so far through the slot it felt his upper arms were coming off, then a guard forced the handcuffs off his writs. (Id.). The complaint claims that Defendants used excessive force in violation of the Eighth Amendment, and that Defendants Nixon, Tischler[3], Craig, Angelo[4], Heredia[5], and Thompson conspired to do nothing to try to stop the application of force. (Id.). Plaintiff also claims that Defendant Taylor harassed him, that Defendants Lamas and Thompson retaliated against him for filing an excessive force complaint, and that Defendants Rackovan[6] and Granlund[7] conspired to ignore his grievance of Defendant Taylor's harassment. (Id.).

On June 21, 2011, after consideration of Defendants' motion to dismiss, (Doc. 22), the Court granted the motion on all claims, except Plaintiff's claims of use of excessive force by Defendants "Taylor, Best, Watson and Detwiler, and the conspiracy of defendants Nixon, Tischler, Craig, Angelo, Heredia and Thompson for witnessing this restraint without intervening." (Doc. 61) (Order dismissing Plaintiff's claims of harassment, placement in

---

3. Incorrectly spelled "Tischar" in the complaint and on the docket.

4. Incorrectly spelled "Ancelo" in the complaint and on the docket.

5. Incorrectly spelled "Heredin" in the complaint and on the docket.

6. Incorrectly spelled "Rockovan" in the complaint and on the docket.

7. The identification section of the complaint names as a defendant "Unit Manager Grail" and does not identify anyone named "Granlund"; however, in the complaint's statement of claim there are no specific averments as to a Defendant Grail but Plaintiff alleges that Unit Manager Granlund conspired against him. (Doc. 1). All Defendants' filings in this case are on behalf of Defendant Granlund. Thus, Defendant Granlund is incorrectly identified on the docket as Unit Manager Grail.

2

administrative custody, revocation of privileges, rejection of grievances, and failure to respond to grievances). Defendants filed an answer to the complaint on June 30, 2011. (Doc. 63).

On April 30, 2012, Defendants filed a motion for summary judgment and statement of undisputed material facts. (Docs. 123, 124). Defendants filed a brief in support of their motion on May 14, 2012. (Doc. 126). Defendants argue that they reasonably believed the use of force was necessary, that certain Defendants were not personally involved in the incident, and that they are entitled to qualified immunity. (Docs. 123-126).

On July 9, 2012, this Court granted Plaintiff's first request for an extension of time, until August 15, 2012, to oppose the summary judgment motion. (Doc. 128). On August 28, 2012, this Court granted Plaintiff's second motion for an extension of time and directed him to file a brief in opposition to Defendants' motion for summary judgment by September 17, 2012. (Doc. 129). Plaintiff's third request for additional time was granted on October 31, 2012, and the deadline to file an opposition brief was extended until November 1, 2012. (Doc. 133). On November 9, 2012, and December 7, 2012, Plaintiff filed additional motions for an extension of time to file a brief in opposition to Defendants' summary judgment motion. (Docs. 134-135). On January 3, 2013, Plaintiff filed a motion for voluntary dismissal of Defendants Tischler and Craig. (Doc. 136). The motion for voluntary dismissal was granted on January 4, 2013, and these Defendants were terminated as parties. (Doc. 139). Also on January 4, 2013, this Court granted Plaintiff's fourth and fifth motions for an extension of time. (Doc. 140). The Order set February 4, 2013, as the deadline for Plaintiff to file his brief in opposition to Defendants' summary judgment motion. (Id.). The Order specifically provided: "[n]o further enlargements of time will be granted." (Id.). The relevant time period has now expired and Plaintiff has failed

to file an opposition brief. Accordingly, Defendants' motion for summary judgment will be deemed unopposed and addressed on the merits.

**Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the

4

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 U.S. Dist. LEXIS 21277, *5-6 (M.D. Pa. 2011) (Jones, J.) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

**Undisputed Facts**

Rule 56 of the Federal Rules of Civil Procedure provides: "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). Similarly, Middle District of Pennsylvania Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1.

Plaintiff has failed to file a brief in opposition to Defendants' motion for summary judgment or a responsive statement of facts; therefore, Defendants' statement of facts, which are supported by affidavits, will be deemed admitted. The undisputed facts, taken from Defendants'

5

statement of undisputed material facts, (Doc. 124), are as follows.

On May 19, 2010, Plaintiff was incarcerated in the Restrictive Housing Unit ("RHU") on the G block of SCI-Rockview. Plaintiff was moved to the G block RHU after stabbing another inmate fourteen times and robbing that inmate. Plaintiff was considered an escape risk. On May 19, 2010, a general cell and strip search of the G block RHU was conducted pursuant to Department of Corrections ("DOC") policy. All inmates housed in the G block RHU were present and subject to the search. More than one of these inmates was either being strip searched or removed from his cell for a cell search during this time. Defendants Detwiler, Watson, Taylor, Angelo, Craig, Heredia, Tischler, Best, and Nixon were on duty and assigned to search the G block RHU. Defendants Nixon and Best supervised the search.

Defendants Taylor and Tischler were assigned to search Plaintiff and his cell. Defendant Tischler conducted the strip search of Plaintiff and did not observe anything in Plaintiff's hands during the search. After the strip search was completed, Defendant Taylor handcuffed Plaintiff with his hands behind his back and held the tether attached to the handcuffs. Defendant Taylor escorted Plaintiff from his cell so Defendant Tischler could perform the cell search. Defendant Taylor noticed something in Plaintiff's hands and Defendant Nixon saw contraband in Plaintiff's hands. The contraband could not be identified because it was covered by Plaintiff's hands. Defendant Taylor gave Plaintiff multiple orders to drop the contraband. Plaintiff heard one of the officers yell "Rister has a razor." Defendants Best and Nixon also each gave Plaintiff multiple orders to drop the contraband. Plaintiff refused to follow the multiple direct orders given by Defendants Taylor, Best, and Nixon. Plaintiff told Defendants to "Fucking take it then." Plaintiff attempted to pull away from Defendant Taylor.

Refusing to obey an order is a violation of DOC rules. Contraband in the hands of an inmate is a potential hazard to the safety of prison staff and inmates. Pursuant to DC-ADM 201-1, Defendants Nixon and Taylor reasonably believed that the use of force was necessary to protect the officers and inmates present and to effect compliance with the rules and regulations when multiple direct orders had been ineffective. Because Plaintiff possessed potentially hazardous contraband, refused to obey multiple direct orders to drop the contraband, and attempted to evade Defendant Taylor, Defendant Nixon ordered that Plaintiff be taken to the ground.

At 7:53 PM, Defendants Taylor and Detwiler placed Plaintiff on the ground, his knees touching the ground first. While on the ground, Plaintiff continued to resist and tried to move away. Defendant Best removed the contraband from Plaintiff's hands, which was determined to be a "fishing line," a rope made from pieces of sheet which are rolled up and tied together. Once Plaintiff stopped resisting and the contraband was removed from his hands, Defendant Nixon ordered that Plaintiff be brought to his feet. Corrections Officers are trained that after an inmate who is handcuffed with his hands behind his back has been taken to the ground, the officers are to assist the inmate in standing by grasping his upper arms. Because Plaintiff was on the ground with his hands handcuffed behind his back, Defendants Detwiler and Taylor properly assisted Plaintiff to his feet by grasping his upper arms.

At 7:54 PM, Defendants Detwiler and Taylor escorted Plaintiff to his cell. The routine procedure used to remove handcuffs after an inmate has been returned to his cell requires that the inmate place his hands in the cell door aperture. Prison officers then remove the inmate's handcuffs. Plaintiff was familiar with this procedure for removing handcuffs. But, once in the

7

cell, Plaintiff continued to resist. He attempted to pull the handcuffs and tether into his cell. Defendants Detwiler and Best pulled on the tether to place Plaintiff's hands through the door aperture while Defendant Taylor removed the handcuffs.

Plaintiff was later escorted to medical and seen by a nurse for injuries. His injuries consisted of abrasions to his right cheek, right arm, left arm, right knee, and a minor hematoma to his forehead. Plaintiff denied any further injuries.

At the time of the incident, Defendants Watson, Tischler, and Craig were in cells conducting searches. They did not witness the events. Defendant Watson's only involvement was to video tape and assist other officers in escorting Plaintiff to medical after the incident. Defendant Watson completed a DC-141 only pertaining to Plaintiff's transportation to medical. Defendants Watson, Tischler, and Craig were not interviewed regarding the unplanned use of force because they were not present and, therefore, were not pertinent to the investigation. Defendants Angelo and Heredia did not participate in the incident. Defendants Granlund, Lamas, Rackovan, and Thompson were not present in the G block RHU at SCI-Rockview on May 19, 2010. These Defendants did not witness the incident involving Plaintiff, and only learned of the events after it had occurred.

**Discussion**

"The use of excessive force against prisoners may constitute cruel and unusual punishment in violation of the Eighth Amendment." Moultrie v. Luzerne County Prison, 2008 U.S. Dist. LEXIS 87008, *13 (M.D. Pa. 2008) (Caputo, J.) (citing Hudson v. McMillian, 503 U.S. 1, 5 (1992)). "The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency."

Tompkins v. County of Lackawanna, 2013 U.S. Dist. LEXIS 20823, *10-13 (M.D. Pa. 2013) (Kane, J.) (citing Hudson, 503 U.S. at 8). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (discussing Whitley v. Albers, 475 U.S. 312 (1986)). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

To determine whether a correctional officer has used excessive force in violation of the Eighth Amendment, the courts consider several factors, including:

> (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321). "The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it." Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. 312). Specifically, "there is no constitutional violation for 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" Brooks, 204 F.3d at 107 (quoting Hudson, 503 U.S. at 9-10).

The undisputed facts of this case establish that Defendants reasonably perceived a threat to the safety of prison staff and inmates and attempted to avoid the use of force. See Young v. Coleman, 2012 U.S. Dist. LEXIS 84777, *31-32 (W.D. Pa. 2012) (granting summary judgment

9

in favor of the defendant on the plaintiff's use of excessive force claim because the defendant perceived the plaintiff to be a threat as he was yelling, thrashing his hands around, disobeying orders, and physically resisting; because the situation could have easily escalated into something much more serious; and because the other officers tried to temper the severity of their response by giving repeated verbal commands that the plaintiff ignored). While Plaintiff was being detained outside his cell, Plaintiff had contraband obscured in his hands. This was a potential hazard to the safety of staff and inmates. More than one other inmate was also being held outside his cells at this time because prison officials were conducting general cell and strip searches of the G block RHU. Defendants knew that Plaintiff had a history of violence, having stabbed another inmate fourteen times. Thus, there was a real threat to the safety of prison staff and inmates. Defendants Taylor, Best, and Nixon tried to temper the extent of their response by each giving Plaintiff multiple orders to drop the contraband. Plaintiff ignored these orders, told Defendants to "Fucking take it then", and attempted to pull away from Defendant Taylor.

The undisputed facts of this case further establish that there was a need for the application of force and that the amount of force used was proportional to the situation. See Tompkins, 2013 U.S. Dist. LEXIS 20823 (finding that the prison official's minimal use of force to regain control of an inmate found to be in possession of contraband during a strip search did not state an excessive force claim). Once Plaintiff disobeyed repeated orders and became resistant, Defendants reasonably believed that the use of force was necessary to protect the officers and inmates present and to effect compliance with prison rules and regulations. Defendants Taylor and Detwiler placed Plaintiff on the ground, knees first. Plaintiff continued to resist. Once Plaintiff finally stopped resisting and the contraband was removed from his hands, Defendants

Detwiler and Taylor followed prison policy in the manner in which they stood him up. Plaintiff was escorted to his cell approximately one minute after first being taken to the ground. To survive summary judgment on an Eighth Amendment excessive use of force claim, "the evidence must 'support a reliable inference of wantonness in the infliction of pain.'" Picozzi, 2011 U.S. Dist. LEXIS 21277 at *14 (concluding that the inmate's excessive use of force claim could not survive summary judgment because the prison officials only used force as a last resort when the inmate continued to resist efforts to transfer the inmate), quoting Whitley, 475 U.S. at 322. "Such an inference of wantonness can be made, for example, when the evidence demonstrates that a guard intends to harm an inmate." Id. at *14-15 n.6. The manner by which Plaintiff was taken to, and lifted from, the ground and the extremely short amount of time it took for Defendants to safely retrieve the contraband and return Plaintiff to his cell, is evidence that Defendants did not intend to inflict harm.

Once Plaintiff was in his cell, Defendants followed prison procedure to remove the handcuffs. Defendants Detwiler and Best pulled on the tether to pull Plaintiff's hands through the door aperture so Defendant Taylor could remove the handcuffs. Plaintiff was familiar with this procedure, but struggled against Defendants' efforts to remove his handcuffs. Plaintiff was later seen by medical for the injuries he sustained after these events. He suffered abrasions to his right cheek, right arm, left arm, right knee, and a minor hematoma to his forehead. Importantly, there is no evidence in the undisputed facts to suggest that the use of force was unnecessary, that the amount of force used was unreasonable, or that Defendants displayed wantonness. Further, Plaintiff suffered only minor injuries.

In Dockery, an inmate refused to relinquish the handcuffs after he was subjected to a cell

search. Dockery v. Beard, 2013 U.S. App. LEXIS 873, *8-9 (3d Cir. 2013). The defendants used a tether attached to the cuffs to pull his hands through the door slot to prevent him from using the cuffs as a weapon. Id. The inmate suffered abrasions to his wrist. Id. The Court held that the minor injuries are "evidence indicat[ing] that officers applied minimal force in a 'good-faith effort to maintain or restore discipline'" and "the District Court properly granted summary judgment to [the defendants]." Id.

In Freeman, the plaintiff complained of the pushing and pulling of his left arm through the wicket of his cell while prison officials attempted to remove his handcuffs and an attached tether after he entered his cell. See Freeman v. Dep't of Corr., 2011 U.S. Dist. LEXIS 34551, "29-31 (M.D. Pa. 2011) (Munley, J.). The Court held that regardless of the struggle, "this is clearly not a case where the Plaintiff claims that he was subjected to an intentional sadistic beating. Nor is there any contention that the officers used any force once the handcuff issue was resolved. ..." Id. The Court reasoned that the force applied was not disproportionate to the aggressive behavior exhibited by the plaintiff and resulted in minimal injury, abrasions. Id. The Court granted summary judgment, concluding that "no reasonable jury could find the wanton and unnecessary infliction of pain required to establish an Eighth Amendment violation." Id.

Plaintiff has failed to submit any evidence to contradict the record, which establishes that in light of his continued resistance, force was applied in good-faith to safely remove the contraband from Plaintiff's hands, return him to his cell, and remove the handcuffs. Consequently, summary judgment will be granted in favor of Defendants Taylor, Best, Nixon, and Detwiler on Plaintiff's excessive force claim.

Additionally, according to the undisputed facts, only Defendants Taylor, Best, Nixon, and

Detwiler were involved in the incident on May 19, 2010. The remaining Defendants[8]: Watson, Angelo, Heredia, Lamas, Rackovan, Thompson, and Granlund, will therefore be dismissed for lack of personal involvement. See Hill v. Lappin, 2012 U.S. Dist. LEXIS 34926, *13-14 (M.D. Pa. 2012) (Conaboy, J.) (granting summary judgment in favor of certain defendants on the grounds of lack of personal involvement); White v. Bledsoe, 2011 U.S. Dist. LEXIS 65246, *20 (M.D. Pa. 2011) (Kane, J.) (deeming the defendants' motion for summary judgment unopposed and granting it for lack of personal involvement on the part of the defendants). Importantly, a "defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). "[E]ach named defendant must be shown ... to have been personally involved in the events or occurrences which underlie a claim." Thomas v. Varano, 2012 U.S. Dist. LEXIS 32961, **24 (M.D. Pa. 2012) (Nealon, J.) (citing Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976)). The undisputed facts demonstrate that the remaining Defendants could not have violated Plaintiff's constitutional rights because they were not personally involved with the challenged conduct.

### A.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This doctrine "provides not only a defense to liability, but "immunity from suit." Milhouse v. Gee, 2011 U.S. Dist.

---

8. Defendants Craig and Tishler were terminated as parties on January 4, 2013. (Doc. 139).

LEXIS 91749, *25 (M.D. Pa. 2011) (Rambo, J.) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)). "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, normal principles of summary judgment still apply, and any disputes of fact must be resolved in favor of the plaintiff." Estate of Smith v. Marasco, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

"[C]laims of qualified immunity are to be evaluated using a two-step process." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194 (2001)). "First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." Bennett, 274 F.3d at 136. "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Id. The "court must dispose of the claim in the defendant's favor." Milhouse, 2011 U.S. Dist. LEXIS 91749 at *25 (citing Saucier, 533 U.S. at 201). Only once "it is determined that evidence of a constitutional violation has been adduced, [will] courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established." Bennett, 274 F.3d at 136. If the right was clearly established, "then a court must inquire as to 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Carvalho v. Bledsoe, 2012 U.S. Dist. LEXIS 137937, *37 (M.D. Pa. 2012) (Conaboy, J.) (quoting Saucier, 533 U.S. at 201).

Defendants argue that they are entitled to qualified immunity because they "in no way violated Plaintiff's constitutional rights." (Doc. 126, p. 18). Alternatively, Defendants assert that a reasonable corrections officer would not understand that his actions of pulling on a tether to prevent a resisting inmate from obtaining a weapon violated any constitutional rights. (Id.).

14

For the reasons explained herein, this Court has determined that the undisputed facts do not show that Plaintiff's constitutional rights were violated. Accordingly, Defendants are entitled to qualified immunity. See Milhouse, 2011 U.S. Dist. LEXIS 91749 at *24-27 (granting the defendants' motion for summary judgment because the plaintiff "failed to set forth an Eighth Amendment claim with respect to this use of force incident ... and qualified immunity shields Defendants from suit").

**Conclusion**

Despite numerous extensions of time allowing Plaintiff to file a brief in opposition to Defendants' motion for summary judgment, Plaintiff failed to respond. Defendants' motion is therefore deemed unopposed. Addressing the motion on the merits, this Court finds that the undisputed facts establish that the minimal use of force by Defendants Taylor, Best, Nixon, and Detwiler was applied in a good-faith effort to maintain and/or restore discipline. Accordingly, there was no constitutional violation. None of the other remaining Defendants were involved in the incident and therefore lack personal involvement. Finally, because the undisputed facts do not show a constitutional violation, all Defendants are entitled to qualified immunity. Defendants' motion for summary judgment will be granted.

A separate Order will be issued.

Date: March 1, 2013

United States District Judge